Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>CHRISTIAN ONEILL FLORES RAMOS<br><br>Recurrido | TA2026CE00423 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Crim Núm.: ISVP202500115<br><br>Por: Ley 4, Art 401 |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General de Puerto Rico ("Procurador General" o "Parte Peticionaria") mediante *Petición de Certiorari* presentada el 8 de abril de 2026. Nos solicita la revisión de la *Resolución* notificada el 10 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez ("foro primario" o "foro *a quo*"). Por virtud del referido dictamen, el foro primario ordenó la desestimación de la acción penal radicada contra el señor Christian O. Flores Ramos ("señor Flores Ramos" o "Parte Recurrida") por violación a los términos de juicio rápido en la etapa de vista preliminar en alzada.

Por los fundamentos expuestos a continuación, ***expedimos*** el *certiorari*, y ***revocamos*** el dictamen recurrido.

## I.

Por hechos suscitados el **28 de julio de 2025**, el Ministerio Público radicó denuncia contra el señor Flores Ramos por alegada

violación al Artículo 401 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, ("Ley Núm. 4-1971"), 24 LPRA sec. 2404.6.[1]

Así las cosas, el **11 de agosto de 2025**, el foro primario determinó causa probable para arresto contra la Parte Recurrida, de conformidad la Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.[2] Continuados los procedimientos, el foro *a quo* celebró vista preliminar el **3 de noviembre de 2025**, al amparo de la Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R. 23, en la cual determinó no causa probable para acusar.[3]

No obstante, a solicitud del Ministerio Público, el foro *a quo* señaló vista preliminar en alzada para el **11 de diciembre de 2025**.[4] Sin embargo, **llegado ese día, sin aún vencer el término aplicable a dicho procedimiento**, **los agentes no comparecieron al señalamiento**. Por ende, el foro primario señaló la vista preliminar en alzada para **el 8 de enero de 2026.**

**Acontecida dicha fecha**, únicamente compareció el agente Jonathan Crespo Aquino ("agente Crespo Aquino") a la vista preliminar en alzada. Durante este proceso, la defensa argumentó que los procedimientos se encontraban fuera del término de juicio rápido.[5] Por su parte, el Ministerio Público reconoció que no estaba preparado, pero explicó que existía justa causa para la demora. **Informó que el agente Ángel Vargas Cruz** ("agente Vargas Cruz") **se encontraba en el proceso de arreglo de las exequias de su hermana, quien falleció ese mismo día.[6]** A la luz de lo indicado, el foro primario le preguntó a la fiscalía si podía comenzar la vista con el agente Crespo Aquino. En respuesta, el Ministerio Público

---

[1] Apéndice de *Petición de Certiorari*, Anejo I, pág. 1.
[2] Apéndice de *Petición de Certiorari*, Anejo I, 1-2.
[3] Apéndice de *Petición de Certiorari*, Anejo III, págs. 1-4.
[4] Apéndice de *Petición de Certiorari*, Anejo III, pág. 3.
[5] 0:05:50 a 0:06:00, de la *Regrabación de la Vista Evidenciaria.*
[6] 0:06:00 a 0:06:27, de la *Regrabación de la Vista Evidenciaria.*

expresó que "**puede comenzar si el tribunal me da una continuación**".[7]

Por su parte, la defensa se opuso a la celebración de la vista preliminar en alzada, toda vez que no se encontraba tampoco el agente Irving Alicea Caraballo ("agente Alicea Caraballo").[8] A esos efectos, a preguntas del tribunal recurrido, el agente Crespo Aquino explicó que, según su entendimiento, no se citó al agente Alicea Caraballo al señalamiento posterior del 11 de diciembre de 2025.[9] Informó, también que, el Negociado de la Policía (División de Drogas) activó al mencionado agente para atender un asunto referente a un asesinato en la jurisdicción de Ponce.[10]

Ante tal situación**, el foro primario le preguntó a la defensa cuáles son los perjuicios que causó esta demora.**[11] **En respuesta, la defensa alegó que no hay excusa alguna por parte del Ministerio Público para celebrar tardíamente este señalamiento**.[12]

**Trabada así la controversia, el tribunal recurrido procedió a celebrar vista evidenciaria de conformidad con la Regla 64(n) de Procedimiento Criminal, 32 LPRA Ap. II, R. 64.** Así las cosas, el fiscal solicitó al foro *a quo* permiso para que el agente Crespo Aquino declarara **bajo juramento**. A preguntas del Ministerio Público, el testigo declaró que no compareció a la vista preliminar en alzada del 11 de diciembre de 2025, porque se encontraba indispuesto de salud.[13] Así lo acreditó mediante la presentación de evidencia documental de certificado médico.[14] Detalló, por otro lado,

---

[7] 0:06:51 a 0:06:56, de la *Regrabación de la Vista Evidenciaria.*
[8] 0:06:58 a 0:07:13, de la *Regrabación de la Vista Evidenciaria.*
[9] 0:09:07 a 0:09:20, de la *Regrabación de la Vista Evidenciaria.*
[10] 0:09:27 a 0:09:32, de la *Regrabación de la Vista Evidenciaria.*
[11] 0:17:20 a 0:17:27, de la *Regrabación de la Vista Evidenciaria.*
[12] 0:20:27 a 0:20:31, de la *Regrabación de la Vista Evidenciaria.*
[13] 0:25:10 a 0:25:16, de la *Regrabación de la Vista Evidenciaria.*
[14] **Surge del contenido de la *Regrabación* (0:04:06 a 0:04:25) que, al inicio de la vista, el foro primario tuvo ante sí el certificado médico presentado por el agente Crespo Aquino, cuyo contenido coincidió con la fecha del señalamiento del 11 de diciembre de 2025.**

que el agente Alicea Caraballo no declaró en la vista preliminar, pues solo comparecerían a dicho señalamiento este servidor, según el testigo se denominó, y el agente Vargas Cruz.[15] Por lo anterior, asumió que no se le entregó la citación al agente Alicea Caraballo.[16] No obstante, manifestó que en la mañana se comunicó con este último, quien le expresó que fue asignado a la División de Drogas de Negociado de la Policía para efectuar un plan de trabajo en la jurisdicción de Ponce.[17]

Acorde con lo informado, el foro primario determinó inicialmente que "**nosotros vamos a comenzar la vista en el día de hoy**" sujeto a la continuación de los procedimientos en fecha posterior.[18] **Sin embargo, la defensa suplicó que no comenzara la vista** por violación al término de juicio rápido.[19] Ahora bien, argumentó que, si el foro primario no concederá la desestimación, debía reseñalar la celebración de la vista para un día completo.[20]

No obstante, a punto de concluir la vista evidenciaria, el foro primario advino en conocimiento, por información brindada por un funcionario de la Oficina de Citación, de que fueron expedidas las órdenes de mostrar causa dirigida a los agentes por la incomparecencia del 11 de diciembre de 2025. Al respecto, precisó que fueron recibidas por el retén **15 de diciembre de 2025**.[21] Sobre este particular, el agente Crespo Aquino manifestó que el retén debía efectuar las gestiones correspondientes para la entrega de tales citaciones al agente Alicea Caraballo.[22] En vista de lo anterior, la defensa reiteró que el Ministerio Público incumplió en garantizar el derecho a juicio rápido.[23]

---

[15] 0:25:34 a 0:25:43, de la *Regrabación de la Vista Evidenciaria.*
[16] 0:26:07 a 0:26:15, de la *Regrabación de la Vista Evidenciaria.*
[17] 0:26:29 a 0:26:39, de la *Regrabación de la Vista Evidenciaria.*
[18] 0:32:29 a 0:32:45, de la *Regrabación de la Vista Evidenciaria.*
[19] 0:32:51 a 0:32:55, de la *Regrabación de la Vista Evidenciaria.*
[20] 0:32:56 a 0:33:01, de la *Regrabación de la Vista Evidenciaria.*
[21] 0:33:44 a 0:35:00, de la *Regrabación de la Vista Evidenciaria.*
[22] 0:35:05 a 0:35:12, de la *Regrabación de la Vista Evidenciaria.*
[23] 0:36:24 a 0:36:33, de la *Regrabación de la Vista Evidenciaria.*

Tras escuchar ambas partes, el foro primario dejó sin efecto el señalamiento de vista preliminar en alzada, y desestimó el caso por violación a los términos de sesenta (60) días.[24]

En corte abierta, a modo de reconsideración, la fiscalía argumentó que la defensa no ha demostrado el perjuicio.[25] Atendida su argumentación, el foro *a quo* dispuso *No Ha Lugar* la reconsideración, y adelantó que el dictamen se recogería por escrito.[26] Agregó que, si el foro primario no hace su trabajo para que se garantice estos términos, ello se prestaría para que se continuaran los procedimientos en exceso del plazo dispuesto en ley.[27] Por último, concluyó que la jurisprudencia reconoce la ansiedad que causan los procedimientos legales, y razonó que ello es parte del daño que se comete cuando no se cumple con el debido proceso de ley.[28]

Según adelantado, el foro primario dictó *Resolución* el 9 de febrero de 2026, notificada al día siguiente, a la luz del siguiente razonamiento:

> En el presente caso, surge claramente del récord que la Vista Preliminar en Alzada fue señalada para el 11 de diciembre de 2025, y que, pese a que el imputado compareció, el Ministerio Público no presentó su prueba, aun cuando los agentes habían quedado citados previamente en corte abierta. Ante dicha incomparecencia, el Tribunal concedió una última oportunidad y transfirió la vista para el 8 de enero de 2026, expresamente como último día de los términos aplicables, dejando constancia de que la defensa no renunciaba al derecho a juicio rápidos.
>
> No obstante, llegada la fecha del 8 de enero de 2026, solo uno de los tres agentes citados compareció, provocando que el Ministerio Público se declarara nuevamente no preparado. Esta dilación es atribuible exclusivamente al Estado. Del récord surge que el Tribunal emitió oportunamente las órdenes de citación, las cuales fueron entregadas al retén de la División de Drogas de Mayagüez el 16 de diciembre de 2025, sin que exista evidencia de que dichas citaciones fueran diligenciarse ni devueltas a la Oficina de Alguaciles, según ordenado.
>
> Las fallas administrativas, deficiencias en la coordinación interagencial o problemas internos de la Policía no constituyen justa causa para prorrogar los términos de juicio

---

[24] 0:36:34 a 0:36:50, de la *Regrabación de la Vista Evidenciaria.*
[25] 0:36:53 a 0:37:10, de la *Regrabación de la Vista Evidenciaria.*
[26] 0:37:25 a 0:37:28, de la *Regrabación de la Vista Evidenciaria.*
[27] 0:38:20 a 0:38:37, de la *Regrabación de la Vista Evidenciaria.*
[28] 0:38:38 a 0:39:08, de la *Regrabación de la Vista Evidenciaria.*

rápido y no pueden ser imputadas al acusado, mucho menos ante la falta de prueba que indique que la demora se deba a la solicitud del acusado o a su consentimiento.

Asimismo, el imputado invocó oportunamente su derecho al juicio rápido al momento en que el Ministerio Público se declaró no preparado el 8 de enero de 2026. A ello se suma que el imputado ha estado sujeto al proceso penal desde agosto de 2025, con múltiples señalamientos fallidos y sin que el Estado lograra presentar su prueba mínima, lo cual constituye una dilación indebida que conlleva un perjuicio real y presumido.

Bajo estas circunstancias, este Tribunal concluye que la dilación es irrazonable, que no existe justa causa atribuible al imputado, y que el Estado incumplió con su deber de diligencia en la prosecución del caso. En consecuencia, procede la desestimación de la causa conforme a la Regla 64(a) (8) de Procedimiento Criminal.[29]

Oportunamente, el 24 de febrero de 2026, el Ministerio Público presentó *Moción de Reconsideración*.[30] En esencia, contextualizó que el **2 de septiembre de 2025** no se celebró la vista preliminar, toda vez que la defensa manifestó que le interesaba examinar unos videos, por lo que, se pospuso el señalamiento para **el 7 de octubre de 2025**. Sin embargo, alegó que **llegado ese día** tampoco se celebró dicha vista, por ende, se transfirió el señalamiento para el **3 de noviembre de 2025**. Relató que, **en la fecha pautada** comparecieron los agentes Vargas Cuz y Crespo Aquino como testigos de cargos. Sin embargo, reconoció que el foro *a quo* no encontró causa probable para acusar al señor Flores Ramos, pero pautó vista preliminar en alzada para el **11 de diciembre de 2025**.

No obstante, el Ministerio Público detalló en su escrito que, **acontecida dicha fecha**, entiéndase, el 11 de diciembre de 2025, los agentes Vargas Cruz, Crespo Aquino y Alicea Caraballo no comparecieron a la vista. Por tanto, indicó que el foro primario señaló vista preliminar en alzada para el **8 de enero de 2026,** sin embargo, este proceso no se pudo celebrar por causas justificadas. Ello, pues, explicó que durante el señalamiento solo compareció el

---

[29] Apéndice de *Petición de Certiorari*, Anejo II, págs. 7-8.
[30] Apéndice de *Petición de Certiorari*, Anejo IV, págs. 1-10.

agente Crespo Aquino. Ahora bien, puntualizó que el agente Vargas Cruz no compareció debido al fallecimiento de su hermana, mientras que el agente Alicea Caraballo no se encontraba presente porque estaba asignado a un servicio de la Policía de Puerto Rico en la jurisdicción de Ponce. En vista de lo expuesto, arguyó que la tardanza en la celebración estaba ampliamente justificada. A su vez, argumentó que la dilación no fue excesiva, intencional ni opresiva. Agregó que la Parte Recurrida no se encontraba bajo custodia del Estado, sino que estaba en libertad, y, además, no alegó haber sufrido un perjuicio sustancial y real por el exceso del término.

Por su parte, el **4 de marzo de 2026**, el señor Flores Ramos radicó *Moción en Cumplimiento de Orden.*[31] En esencia, adujo que desde el primer señalamiento la prueba del Ministerio Público no estaba presente. En lo pertinente a la vista calendarizada para el 8 de enero de 2026, adujo que el agente Vargas Cruz no compareció por el fallecimiento de su hermana, sin embargo, indicó que este debió para brindar excusas al respecto. De modo similar, arguyó que la incomparecencia del agente Irving Alicea Caraballo tampoco estuvo acreditada de manera adecuada, toda vez que no se excusó debidamente ante el tribunal recurrido. No obstante, reconoció que a la vista preliminar en alzada compareció el agente Crespo Aquino, quien declaró sobre los asuntos que impidieron la asistencia al señalamiento de sus compañeros agentes. En vista de ello, dedujo que la fiscalía no estaba preparada para la celebración de la vista, por lo que, razonó que no hay razón justificada para la demora.

Evaluados sus respectivos argumentos, el 6 de marzo de 2026, foro primario emitió *Resolución*, notificada el 9 de marzo de 2026, en la cual declaró *No Ha Lugar* la reconsideración presentada por el Ministerio Público.

---

[31] Apéndice de *Petición de Certiorari*, Anejo V, págs. 1-3.

Inconforme, el 8 de abril de 2026, el Pueblo de Puerto Rico, por conducto del Procurador General, acudió ante este Tribunal de Apelaciones mediante *Petición de Certiorari*, en la cual esbozó el siguiente señalamiento de error:

> El Honorable Tribunal de Primera Instancia erró en derecho al ordenar la desestimación del caso ISVP202500115 por presunta violación al derecho a juicio rápido, pese a que las circunstancias del caso de epígrafe demuestran que medio justa causa para la dilación y el señor Flores Ramos no alegó que la demora le causara un perjuicio real y sustancial.

El 9 de abril de 2026, esta Curia emitió *Resolución*, mediante la cual concedió a la Parte Recurrida el término a vencer el 20 de abril de 2026 para someter su alegato en oposición. En virtud de nuestro dictamen, advertimos que "[d]e no cumplir en el término dispuesto, procederemos sin el beneficio de su comparecencia".

Constatamos que el señor Flores Ramos no presentó su posición ante nos. Por lo que, procedemos a resolver la controversia ante nuestra consideración sin el beneficio de su comparecencia.

## II.
### A. Recurso de certiorari

Es norma reiterada que, el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491, según emendada. Por su naturaleza, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Cónsono con lo anterior, es menester explicar que, "el *certiorari* procede para revisar errores cometidos por las cortes

inferiores no importa la naturaleza del error imputado". *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009). Ahora bien, este vehículo procesal "debe limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado". *Íd*. A tales efectos, la Regla 40 del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), instaura los criterios para considerar la expedición del auto de *certiorari*:

**(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.**

**(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.**

**(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.**

**(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.**

**(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**

**(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.**

(G) **Si la expedición del ato o de la orden de mostrar causa evita un fracaso de la justicia.** (Énfasis nuestro).

Los criterios que anteceden permiten que los tribunales apelativos revisores ejerzan prudentemente su discreción al decidir si atiende en los méritos el recurso. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372-373 (2020). A su vez, procuran que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. En ese sentido, estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209. Ello, pues "el *certiorari* sigue siendo un recurso discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso". *Pueblo v. Díaz De León, supra*, pág. 918. No obstante, los tribunales revisores tenemos facultad

para sustituir el criterio del foro primario "cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho". *Pueblo v. Rivera Montalvo, supra,* págs. 373; *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

### B. Derecho a juicio rápido

Nuestro esquema constitucional reconoce el derecho a la celebración de juicio rápido en todos los casos criminales. Enmda. VI, Const. EE.UU., LPRA, Tomo I; Art. II, Sec. 11, Const. PR, LPRA, Tomo 1.[32] En virtud de esta protección, se procura vindicar el derecho constitucional del acusado y el derecho a la sociedad a que se juzgue sin dilación alguna a los que infringen la ley. *Pueblo v. Martínez Hernández*, 208 DPR 872, 882 (2022); *Pueblo v. Thompson Faberllé*, 180 DPR 497, 502 (2010). Esta garantía se activa desde que el ciudadano queda "sujeto a responder" (*held to answer*) por la comisión de un delito, es decir, desde la determinación de causa probable para arrestar, citar o detener a dicho ciudadano. *Pueblo v. Guzmán*, 161 DPR 137, 152-153 (2004). De tal manera, se protege al acusado contra la detención opresiva, se minimizan sus ansiedades y preocupaciones, y se reducen las posibilidades de que se afecte su defensa. *Pueblo v. Valdés et al.* 155 DPR 781, 789 (2001). A su vez, al amparo de este derecho "se intentan satisfacer las exigencias sociales de enjuiciar con prontitud a quienes son acusados de violentar sus leyes". *Pueblo v. García Vega*, 186 DPR 592, 607 (2012); *Pueblo v. Valdés et al.*, *supra*, pág. 789.

---

[32] La Constitución de Estados Unidos contempla este derecho de la siguiente manera: "*[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial*". Enmda. VI, Const. EE.UU., LPRA, Tomo I. De modo similar, esta garantía constitucional consta así en nuestra Carta Magna: "[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido". Art. II, Sec. 11, Const. PR, LPRA, Tomo I.

En armonía con lo anterior, la Asamblea Legislativa de Puerto Rico prescribió los límites que consideró constitucionalmente razonables para proteger este derecho y brindarle sentido práctico. *Pueblo v. Custodio Colón*, 192 DPR 567, 580 (2015). A tales efectos, la Regla 64(n) de Procedimiento Criminal, 32 LPRA Ap. II, R. 64(n), preceptúa los términos de juicio rápido que rigen las diferentes etapas del proceso penal. En particular, el inciso (8) de la precitada disposición reglamentaria permite la desestimación del caso en la etapa de vista preliminar, según se expone a continuación:

> **La moción para desestimar la acusación o denuncia, o cualquier cargo de las mismas sólo podrá basarse en uno o más de los siguientes fundamentos:**
>
> **[...]**
>
> **(n) Que existen una o varias de las siguientes circunstancias, a no ser que se demuestre justa causa para la demora o a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento:**
>
> **[...]**
>
> **(8) Que se celebró una vista preliminar en alzada luego de 60 días de la determinación de no causa en vista preliminar.** (Énfasis nuestro).

Nótese que "[e]sta regla provee unos términos que sirven de guía para fijar el tiempo que debe transcurrir entre las diferentes etapas del proceso en contra de un acusado". *Pueblo v. Thompson Faberllé, supra*, pág. 503. Estos términos no son fatales, por lo cual pueden extenderse ya sea por justa causa, por demora atribuible al acusado o si el imputado consiente a ello. *Pueblo v. Martínez Hernández, supra*, pág. 883; *Pueblo v. Carrión*, 159 DPR 633, 641 (2003). De conformidad con esta normativa, la Regla 64(n) de Procedimiento Criminal, *supra*, ordena la celebración de vista evidenciaria para ponderar los siguientes aspectos:

> **Se dispone que el tribunal no podrá desestimar una acusación o denuncia, bajo este inciso, sin antes celebrar una vista evidenciaria. En la vista, las partes podrán presentar prueba y el tribunal considerará los siguientes aspectos:**
>
> **(1) Duración de la demora;**
>
> **(2) razones para la demora;**

**(3) si la demora fue provocada por el acusado o expresamente consentida por éste;**

**(4) si el Ministerio Público demostró la existencia de justa causa para la demora, y**

**(5) Los perjuicios que la demora haya podido causar.**

**Una vez celebrada la vista, el magistrado consignará por escrito los fundamentos de su determinación, de forma tal que las partes tengan la oportunidad efectiva y objetiva de evaluar, si así lo solicitan, la reconsideración o revisión de dicha determinación.** (Énfasis nuestro).

Es menester destacar que, que "[n]inguno de los factores es determinante y están sujetos a un balance". *Pueblo v. Rivera Tirado*, 117 DPR 419, 433 (1986). Véase, también, *Pueblo v. Ramos Álvarez*, 118 DPR 782, 790 (1987). Por tanto, al examinar estos contextos, "no estamos ante un ejercicio de tiesa aritmética en el que la inobservancia del término, por sí sola, constituye una violación al derecho a juicio rápido, ni tampoco conlleva la desestimación de la denuncia o la acusación". *Pueblo v. Guzmán, supra*, pág. 154; *Pueblo v. Valdés et al., supra*, pág. 790. El Ministerio Público tiene el peso de la prueba para demostrar: (1) la existencia de causa justa para la demora, o (2) la renuncia expresa, voluntaria y con pleno conocimiento de este derecho por parte del imputado, o (3) que el imputado ha causado la tardanza. *Pueblo v. Rivera Santiago*, 176 DPR 559, 572 (2009), *Pueblo v. Guzmán, supra*, pág. 154 esc. 31.

Según la jurisprudencia interpretativa, la determinación de justa causa debe realizarse caso a caso. *Pueblo v. Rivera Santiago, supra*, pág. 572; *Pueblo v. Valdés et al., supra*, pág. 790. No obstante, "[e]l Ministerio Público no puede descansar en meras alegaciones, generalidades o conclusiones". *Pueblo v. Rivera Santiago, supra*, pág. 572; *Pueblo v. Carrión Roque*, 99 DPR 362, 363 (1970). Ahora bien, de acreditarse que la demora responde a un motivo institucional, atribuible al Estado, procederá la aplicación del siguiente análisis:

**[E]l tribunal deberá evaluar cuidadosamente el motivo institucional alegado. Ante este marco, las demoras institucionales que no tengan el propósito de perjudicar a la persona imputada o acusada, serán evaluadas con**

> **menos rigurosidad que las intencionales. Para que constituya justa causa, el motivo de una demora debe estar enmarcado dentro de parámetros de razonabilidad.**
>
> **Por lo general, las demoras institucionales son imputables al "Estado". Por el contrario, si las demoras no tienen el propósito de perjudicar a la persona imputada o acusada, serán tratadas con menos rigurosidad que las intencionales, cuyo fin es entorpecer la defensa del imputado**. *Pueblo v. Guzmán, supra,* pág. 156. Véase, también, *Jiménez Román v. Tribunal Superior*, 98 DPR 874 (1970). (Énfasis nuestro).

En lo pertinente a este caso, el Tribunal Supremo de Puerto Rico ha reconocido que la ausencia de un testigo por sí no conlleva la desestimación automática de la acción penal. Sobre este particular, en *Pueblo v. Carrión Roque*, 99 DPR 362, 363 (1970), nuestro Máximo Foro estatal emitió el siguiente pronunciamiento aplicable a la controversia ante nuestra consideración:

> **La ausencia de un testigo de cargo esencial ha sido reconocida por la jurisprudencia como justa causa para la demora en la celebración del juicio.** *Pueblo v. Pérez Suárez*, **83 DPR 371 (1961);** *Pennington v. Corte, supra*; *Dyer v. Rossy*, **23 D.P.R. 772 (1916). Es necesario, sin embargo, que se trate de un testigo realmente esencial, que el Ministerio Público haya sido diligente en obtener la comparecencia del testigo y que pueda conseguirse al testigo en la fecha para la cual se suspende el juicio.** (Énfasis nuestro).

Cónsono con lo anterior, el profesor Ernesto L. Chiesa Aponte ha explicado que en estos casos se debe demostrar que (1) el testigo es esencial y que (2) el Pueblo ha procedido diligentemente para obtener su comparecencia, según se explica a continuación:

> **Aquí la norma es bastante clara, aunque su aplicación no sea nada fácil. La ausencia de un testigo de cargo es justa causa para la dilación si se trata de un testigo esencial para el caso del Pueblo y se establece la diligencia desplegada por el ministerio fiscal para obtener la comparecencia del testigo; el testigo debe estar disponible para la fecha del nuevo señalamiento. No basta que el fiscal alegue que se trata de un testigo esencial; "la esencialidad tiene que demostrarse inequívocamente a satisfacción de los tribunales" Ante una moción de desestimación de la defensa, amparada en el derecho a juicio rápido, el Pueblo tiene el peso de la prueba para demostrar ambos elementos (esencialidad del testigo y diligencia del ministerio fiscal para obtener su comparecencia); tal carga no se satisface con generalidades.** E. L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, § 12.1, pág. 146 (citando *a Pueblo v. Carrión Roque,* 99 DPR 362, 363 (1970); *Pueblo v. Arcelay Galán,* 102 DPR 409, 418 (1974); *Pueblo en interés del menor R.G.G.,* 123 DPR 443, 464 (1942)). (Énfasis nuestro).

Por otro lado, respecto al criterio de perjuicio, el Máximo Foro estatal ha establecido que el imputado no tiene que demostrar el estado de indefensión; solo tiene que demostrar que ha sufrido perjuicio. *Pueblo v. Valdés et al.*, *supra*, pág. 792; *Pueblo v. Esquilín Maldonado*, 152 DPR 257, 263 esc. 3 (2000). Ahora bien, "el perjuicio sufrido por el acusado con la dilación tiene que ser específico: No puede ser abstracto ni apelar a un simple cómputo de rigor matemático. Tiene que ser real y sustancial". *Pueblo v. Valdés et al.*, *supra*, pág. 792 (citando a *Pueblo v. Rivera Tirado, supra*, pág. 438). Por lo que "corresponde al acusado establecer el perjuicio sufrido con la dilación, obligación que no se descarga con generalidades". *Pueblo v. Guzmán, supra*, pág. 156. Entiéndase que, "la mera inobservancia del término —sin más— no necesariamente constituye una violación al derecho a juicio rápido, ni conlleva la desestimación de la denuncia o la acusación". *Pueblo v. Valdés et al.*, *supra*, pág. 793; *Pueblo v. Candelaria*, 148 DPR 591, 598 (1999).

A la luz de lo discutido, es menester reiterar que, la alegación de exceso de términos de juicio rápido sin otro fundamento no implica automáticamente la desestimación de la acción penal. El estado de derecho vigente requiere adoptar un análisis tanto cuantitativo como cualitativo, de conformidad con los parámetros establecidos en la Regla 64(n) de Procedimiento Criminal, *supra*. Por ello, el enfoque que estamos llamados a adoptar es "más bien de tipo pragmático y responde a la naturaleza inherente de la dinámica del derecho a juicio rápido". *Pueblo v. Rivera Santiago*, *supra*, pág. 571. Lo anterior descansa en que este "es un derecho que requiere tomar en cuenta las circunstancias que rodean cada reclamo del mismo". *Pueblo v. Rivera Arroyo*, 120 DPR 114, 119 (1987). Ello, pues, el derecho a juicio rápido es un concepto constitucional cuyo contenido no está del todo determinado; es, en parte, variable y

flexible, capaz de ajustarse a las exigencias de cada caso. *Pueblo v. Valdés et al.*, *supra*, pág. 790.

**III.**

De entrada, establecemos que, nos corresponde expedir el auto de *certiorari* solicitado a los fines de revisar el dictamen recurrido, según lo permiten las consideraciones dispuestas en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. En esa línea, precisamos que la situación de hechos expuesta es propicia para el análisis del problema legal señalado, por lo que, nos permite proveer una solución atemperada al estado de derecho vigente. *Veamos.*

En su recurso, el Pueblo de Puerto Rico, por conducto del Procurador General, argumenta que el Ministerio Público acreditó justa causa para la demora en la celebración de la vista preliminar en alzada. No obstante, señala que el señor Flores Ramos nunca alegó ni demostró haber sufrido un perjuicio real, específico y sustancial. Sobre este particular, sostiene que "el foro primario erró al relevar al imputado de demostrar el perjuicio que presuntamente le ocasionó la tardanza".[33] Por ello, razona que "la totalidad de las circunstancias que envuelven este caso demuestra que la desestimación ordenada por el foro primario no puede sostenerse en derecho".[34] *Le asiste la razón.*

Luego de evaluar sosegadamente el recurso de epígrafe, determinamos que el foro primario incidió al desestimar la denuncia radicada por la fiscalía. Adelantamos que el foro *a quo* adoptó un análisis en abstracción de la totalidad de las consideraciones dispuestas en la Regla 64(n) de Procedimiento Criminal, *supra*. Ante tal situación, debemos brindar un pronunciamiento que resulte en armonía con los principios fundamentales que rodean al derecho a

---

[33] *Petición de Certiorari*, pág. 21.
[34] *Petición de Certiorari*, pág. 26.

juicio rápido, y que, a su vez, salvaguarde las exigencias sociales que persigue nuestro sistema de justicia penal. Con esto en mente, pasemos a resolver.

En primer lugar, debemos recordar que, como norma general, nuestro ordenamiento requiere la celebración de la vista preliminar en alzada "luego de 60 días de la determinación de no causa en vista preliminar", según preceptúa la Regla 64(n)(8) de Procedimiento Criminal, *supra*. En consideración a esta disposición, contemplamos que en el caso presente existe una demora de tres (3) días. No obstante, la naturaleza de este término no es fatal, por lo que, puede extenderse de existir justa causa acreditada por el Estado, como ocurre en el caso ante nuestra atención. Véanse, *Pueblo v. Martínez Hernández, supra,* pág. 883; *Pueblo v. Carrión, supra,* pág. 641**. A la luz de esta normativa, contemplamos que, en efecto, existe un exceso del término dispuesto en ley, sin embargo, esta demora está debidamente justificada por las razones que discutiremos a continuación.**

Del expediente se desprende que, en la celebración de la vista evidenciaria, el agente Crespo Aquino declaró que su compañero, el agente Vargas Cruz, no compareció al señalamiento, pues se encontraba atendiendo unos asuntos relacionados con las exequias de su hermana, quien falleció durante ese día. Sobre este particular, puntualizamos que la jurisprudencia vigente establece que, la ausencia de testigo de cargo esencial, como lo es el señor Vargas Cruz, constituye causa justificada para la demora de los términos. *Pueblo v. Carrión Roque, supra,* pág. 363. **Así que, constatamos al amparo de un análisis de razonabilidad que, la incomparecencia del señor Vargas Cruz respondió a motivos humanos, adecuadamente acreditados, los cuales se distancian notoriamente de la falta de diligencia alegada por la defensa de la Parte Recurrida.**

Por otro lado, respecto a la incomparecencia del agente Alicea Caraballo, precisamos que este no declaró en la vista preliminar del 3 de noviembre de 2025. Por consiguiente, la vista preliminar en alzada continuará principalmente con los testimonios de los agentes Crespo Aquino y Vargas Cruz según lo informado por la fiscalía ante el foro primario.[35] Además, surge del expediente que, no se pudo corroborar ante el foro primario si el agente Caraballo Alicea recibió la citación al señalamiento de la vista preliminar en alzada. Ello, pues, aunque el foro primario expidió y diligenció correctamente la citación dirigida a este, no se alcanzó a constatar si dicho agente la recibió, porque el documento notificativo se entregó al retén de turno. No obstante, se desconoce el trámite ulterior ante la comandancia para procurar la adecuada entrega de la citación al señor Alicea Caraballo.

En atención a tales hechos, precisamos que la situación que antecede responde a una demora institucional, debidamente acreditada y enmarcada dentro de los parámetros de razonabilidad. Por lo que, el estado de derecho vigente permite que evaluemos tal suceso de modo menos riguroso siempre y cuando no se procure entorpecer la defensa del imputado. Véanse, *Pueblo v. Guzmán, supra,* pág. 156; *Jiménez Román v. Tribunal Superior, supra.* **No identificada una situación perjudicial en cuanto a este asunto, colegimos que la incomparecencia del señor Alicea Caraballo no ocasionó una demora indebida sobre los términos de juicio rápido que amparan al señor Flores Ramos.**

Evaluado lo anterior, debemos reconocer, por otro lado, que la Parte Recurrida no demostró qué perjuicio sufre por el exceso en la celebración del término de juicio rápido. De hecho, contemplamos que durante la vista evidenciaria, a preguntas del foro primario, el

---

[35] Véase, *Petición de Certiorari,* pág. 25.

señor Flores Ramos, por conducto de su representante legal, se limitó a alegar que no hay excusa alguna por parte del Ministerio Público para celebrar tardíamente este señalamiento.[36] **Lo anterior nos devela que no identificó un daño específico, real y sustancial que impidiera la continuidad de los procedimientos. En esencia, limitó su argumentación a un señalamiento fundamentado en un simple cómputo de rigor matemático.**

Por último, debemos resaltar que, inicialmente el foro primario optó por celebrar la vista preliminar en alzada con el único agente presente, sujeto a la continuidad de los procedimientos en otra fecha posterior. Sin embargo, la Parte Recurrida argumentó que, si el foro *a quo* no concederá la desestimación, debería reseñalar la celebración de la vista para un día completo.[37] Ante ello, colegimos que el foro primario tenía la alternativa de iniciar la vista preliminar en alzada el 8 de enero de 2026 con el único agente presente, sujeto a la continuidad de los procedimientos en fecha posterior. Ahora bien, si no optaba por esa vía, tenía la alternativa de señalar la vista para otra fecha, toda vez que existen causas debidamente justificadas a tales efectos. **No obstante, el foro primario se limitó a acoger el argumento presentado por la defensa del señor Flores Ramos, lo cual le condujo a desestimar erradamente la acción penal instada en su contra, sin ponderar la totalidad de las consideraciones dispuestas en la Regla 64(n) de Procedimiento Criminal,** *supra***.**

En vista de ello, reiteramos que el derecho a juicio rápido exige que los tribunales adopten un enfoque pragmático que garantice la agilidad de los procedimientos y el debido proceso de ley del imputado. No obstante, concluimos que, el tribunal recurrido fundamentó su decisión desestimatoria en un estricto cómputo

---

[36] 0:20:27 a 0:20:31, de la *Regrabación de la Vista Evidenciaria.*
[37] 0:32:56 a 0:33:01, de la *Regrabación de la Vista Evidenciaria.*

matemático sin proveer un análisis minucioso de las circunstancias particulares que revisten a este caso. Es decir, alcanzó un dictamen distante de los parámetros de razonabilidad que dimanan de la Regla 64(n) de Procedimiento Criminal, *supra*, y su jurisprudencia interpretativa. En virtud de lo anterior, revocamos la *Resolución* aquí impugnada, toda vez que la dilación en el término de juicio rápido no fue excesiva, intencional ni opresiva por parte del Estado y respondió a causas debidamente justificadas por el Ministerio Público.

**IV.**

Por los fundamentos que anteceden, ***expedimos*** el auto solicitado, y ***revocamos*** la *Resolución* notificada el 10 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. En consecuencia, regresamos el caso al foro primario para que se señale la celebración de la vista preliminar en alzada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones